IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| CHAD E. WOOD, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| JO ANNE B. BARNHART, | : | |
| Commissioner of Social Security, | : | |
| Defendant | : | No. 01-3670 |

**REPORT AND RECOMMENDATION**

PETER B. SCUDERI
UNITED STATES MAGISTRATE JUDGE                    May      , 2005

This action was brought pursuant to 42 U.S.C. § 405(g) to review the final

decision of the Commissioner of Social Security ("Commissioner") denying the claims of

Chad E. Wood ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the

Social Security Act, 42 U.S.C. §§ 401-405.  The parties have filed cross motions for

summary judgment.  For the reasons set forth below, I recommend that Plaintiff's motion

for summary judgment be granted; Defendant's motion for summary judgment be denied;

the final decision of the Commissioner be vacated; and this matter be remanded for

further proceedings consistent herewith.

I.    **PROCEDURAL HISTORY**

Plaintiff filed an application for DIB on September 24, 1997, alleging that he had

been disabled since August 9, 1996, due to reflex sympathetic dystrophy ("RSD")[1]

---

[1]Social Security Ruling 03-2p states that:
[RSD] is a chronic pain syndrome most often resulting from trauma to a single
extremity . . . Even a minor injury can trigger RSD . . . The most common acute

resulting from a left foot injury.  (Tr. 73).  Plaintiff's application was denied initially and

upon reconsideration on January 20, 1998.  (Tr. 27-31).  Plaintiff requested an

administrative hearing before an Administrative Law Judge ("A.L.J.") which was held on

January 26, 1999.  (Tr. 395-417).  At that time, Plaintiff submitted additional medical

evidence regarding his depression.  (Tr. 33).  After determining that the evidence was not

cumulative of evidence already of record, the A.L.J. vacated the reconsideration

determination and remanded the case to the state agency for evaluation of Plaintiff's

mental disorder.  (Tr. 32-34).

On May 25, 1999, the state agency once again denied Plaintiff's claim.  (Tr. 35-39,

49-51).  Plaintiff requested a new hearing, which was held on October 5, 1999.  (Tr. 369-

394).  Plaintiff testified before the A.L.J., but the vocational expert who was scheduled to

testify at the hearing was excused due to a possible conflict.[2]  (Tr. 371-394).  At a third

hearing held on February 9, 2000, the A.L.J. heard additional testimony from Plaintiff and

---

clinical manifestations include complaints of intense pain and findings indicative
of autonomic dysfunction at the site of the precipitating trauma.  Later,
spontaneously occurring pain may be associated with abnormalities in the affected
region involving the skin, subcutaneous tissue, and bone.  It is characteristic of
this syndrome that the degree of pain reported is out of proportion to the severity
of the injury sustained by the individual.
RSD can be established by the presence of the following signs or symptoms: swelling of the
affected extremity; changes in skin color or texture; changes in sweating; changes in skin
temperature; abnormal hair or nail growth; and involuntary movements of the affected region of
the initial injury.  SSR 03-2p.

[2]The vocational expert had previously testified in Plaintiff's Workers' Compensation
case.

a vocational expert.  (Tr. 351-368).

Plaintiff's claim was denied by the A.L.J. on March 20, 2000.  (Tr. 10-25).  On May 18, 2001, the Appeals Council denied Plaintiff's request for review, making the A.L.J.'s decision the final decision of the Commissioner.  (Tr. 5-7).  Plaintiff then filed this action for judicial review of the final decision of the Commissioner.

## II.   STANDARD OF REVIEW

Under the Social Security Act, a claimant is "disabled" if he or she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less that twelve (12) months."  42 U.S.C. § 423(d)(1)(A).  A five- (5-) step sequential evaluation has to be used to evaluate a disability claim.[3]  The initial burden of proving disability rests with the claimant, who can meet this burden by demonstrating an ability to return to previous work.  <u>Stunkard v. Secretary of Health and Human Services</u>,

---

[3]The steps are as follows:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, then the Commissioner considers in the second step whether the claimant has a "severe impairment" that significantly limits his physical or mental ability to perform basic work activities.  If the claimant suffers a severe impairment, the third inquiry is whether, based on the medical evidence, the impairment meets the criteria of the impairment listed in the "listing of impairments," . . . , which result in a presumption of disability, or whether the claimant retains the capacity for work.  If the impairment does not meet the criteria for a listed impairment, then the Commissioner assesses in the fourth step whether, despite the severe impairment, the claimant has the residual functional capacity to perform his past work.  If the claimant cannot perform his past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

<u>Sykes v. Apfel</u>, 228 F.3d 259, 262-63 (3d Cir. 2000); <u>see also</u> 20 C.F.R. § 404.1520.

841 F.2d 57, 59 (3d Cir. 1988); 42 U.S.C. § 423(d)(1). Once a showing is made, the burden of proof shifts to the Commissioner to show that the claimant, given his or her age, education and work experience, has the ability to perform specific jobs that exist in the economy. Rossi v. Califano, 602 F.2d 55, 57 (3d Cir. 1979).

The Commissioner has supplemented this sequential process for evaluating a claimant's eligibility for benefits with additional regulations dealing specifically with mental impairments. Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999); see also 20 C.F.R. § 404.1520a. These procedures require the A.L.J. to record the pertinent signs, symptoms, findings, functional limitations and effects of treatment contained in the case record, in order to determine if a mental impairment exists. 20 C.F.R. § 404.1520a(b)(1). If an impairment is found, the A.L.J. must analyze whether certain medical findings relevant to a claimant's ability to work are present or absent. 20 C.F.R. § 404.1520a(b)(2). If the mental impairment is considered "severe," the A.L.J. must then determine if it meets a listed mental disorder. 20 C.F.R. § 404.1520a(c)(2). If the impairment is severe, but does not reach the level of a listed disorder, then the A.L.J. must conduct a residual functional capacity assessment. 20 C.F.R. § 404.1520a(c)(3).

Judicial review of a final decision of the Commissioner is limited. The District Court is bound by the findings of the Commissioner if they are supported by substantial evidence and were decided according to correct legal standards. 42 U.S.C. § 405(g); Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994); Allen v. Bowen, 881 F.2d 37, 39 (3d

4

Cir. 1989); Doak v. Heckler, 709 F.2d 26, 28 (3d Cir. 1986).  Substantial evidence is "more than a mere scintilla," and "such relevant evidence as a reasonable mind might accept as adequate."  Burnett v. Apfel, 200 F.3d 112, 118 (3d Cir. 2000) (citing Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999)).  Even if the record could support a contrary conclusion, the decision of the A.L.J. will not be overturned if the A.L.J.'s findings were supported by substantial evidence.  Simmonds v. Heckler, 807 F.2d 54, 58 (3d Cir. 1986); Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

Although deference to administrative decisions is implied by the foregoing standard, the court is still responsible for scrutinizing the entire record, and to reverse and remand to the A.L.J. if the A.L.J.'s decision is not supported by substantial evidence. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

## III.    FACTS

### A.    Background

Plaintiff was 26 years old at the time his disability insured status expired on March 31, 1999.  (Tr. 59).  He has a high school education, and past relevant work as a truck driver and bartender.[4]  (Tr. 363-364, 398).

On August 13, 1996, Plaintiff sought treatment from his podiatrist, Mark Maehrer,

---

[4]The vocational expert identified these jobs as semi-skilled work performed at the medium exertional level.  (Tr. 365).  Medium work involves lifting no more than fifty (50) pounds at a time with frequent lifting or carrying of objects weighing up to twenty-five (25) pounds.  20 C.F.R. § 404.1567(c).  If someone can do medium work, the Social Security Administration has determined that he or she can also do sedentary and light work.  Id.

D.P.M., for pain in the ball of his left foot.[5]  (Tr. 100).  Upon examination, Dr. Maehrer

reported diffuse pain on palpation with no swelling or bruising.  (Tr. 100).  The doctor

noted that an x-ray performed a few days earlier did not reveal a stress fracture.  (Tr.

100).  He opined that Plaintiff's injury was probably "overuse type trauma with his work"

and recommended rest for a couple of days to alleviate his pain.  (Tr. 100).

On August 26, 1996, Plaintiff reported continued left foot pain.  (Tr. 100).  A bone

scan yielded normal results.  (Tr. 100).  On September 3, 1996, Dr. Maehrer noted

minimal discoloration over the area and a mild amount of edema.  (Tr. 100).  The doctor

placed Plaintiff in a cast "to calm down his symptoms."  (Tr. 100).

On September 19, 1996, Dr. Maehrer removed Plaintiff's cast pursuant to

Plaintiff's complaint that it was aggravating his left foot pain.  (Tr. 98).  On September

30, 1996, Dr. Maehrer reported that Plaintiff continued to report left foot pain.  (Tr. 98).

However, the doctor noted that an MRI of Plaintiff's foot was "essentially negative."  (Tr.

98).  Dr.Maehrer recommended physical therapy and on October 21, 1996, Plaintiff

reported to Dr. Maehrer that he was "much better" since starting physical therapy

sessions.  (Tr. 98).

On October 31, 1996, Plaintiff was examined by Thomas A. Ward, M.D., an

---

[5]Although Plaintiff later claimed that his foot pain began "when he jumped off the back
of a truck and sustained an injury to his foot," (Tr. 103), he told Dr. Maehrer that he had no
history of injury to the foot.  (Tr. 100).  Instead, Plaintiff attributed the pain to the work
requirement that he continually step in and out of his delivery truck to deliver produce.  (Tr. 100).

orthopedic surgeon, for an independent medical examination.  (Tr. 103-104).  Dr. Ward

noted that Plaintiff walked with a limp on the left side and was unable to walk on his toes

on his left foot.  (Tr. 103).  Plaintiff reported left foot pain, but Dr. Ward found no

discoloration of the skin or swelling, and noted that the remainder of Plaintiff's

orthopedic examination was normal.  (Tr. 103).  The doctor opined that Plaintiff could

have RSD, but also noted that Plaintiff was doing "reasonably well."  (Tr. 103).  He

recommended that Plaintiff continue physical therapy and return to light duty work.  (Tr.

104).  Dr. Ward also noted that with "an aggressive physical therapy program," Plaintiff

should able to return to his regular job within four (4) to six (6) weeks.  (Tr. 104).

　　　　After a bone scan of the left foot on February 3, 1997, suggested possible RSD,

Dr. Ward referred Plaintiff to Karen E. Waters, M.D.  (Tr. 105-106, 109-111).  Upon

examination, Dr. Waters noted that Plaintiff favored the left leg and experienced

tenderness over the left foot.  (Tr. 111).  She also noted increased temperature in the left

foot with swelling and slight edema.  (Tr. 111).  Dr. Waters diagnosed RSD,

recommended a diagnostic sympathetic block to confirm the diagnosis, and prescribed

antidepressants to help Plaintiff with pain and sleep.  (Tr.  111).

　　　　Plaintiff began sympathetic block treatment with Yasin N. Khan, M.D.  (Tr. 116).

On May 13, 1997, Dr. Khan reported that he had administered eight (8) Bier blocks which

had provided temporary pain relief.  (Tr. 122).  Dr. Khan noted that Plaintiff's left foot

showed changes in coloration along with decreased temperature and mobility.  (Tr. 122).

On June 4, 1997, Dr. Khan reported that he had administered a series of lumbar sympathetic blocks which had produced an increase in temperature and changes in coloration, but no pain relief. (Tr. 119). On July 17, 1997, the doctor noted that Plaintiff had minimal symptomatology of sudomotor changes of his foot and no atrophy of the lower extremity. (Tr. 117). In the absence of any other symptomatology, Dr. Khan hypothesized that Plaintiff's pain "could be local periosteal irritation from movement of his foot." (Tr. 117). The doctor recommended aqua therapy along with strength building of the lower extremities. (Tr. 117). Dr. Khan opined that Plaintiff could perform light work in an eight (8) hour workday, alternating 45 minutes on his feet and 15 minutes sitting down. (Tr. 117).

On July 22, 1997, Dr. Khan referred Plaintiff to Jon D. McGann, Ph.D., a clinical psychologist, to assist him in managing his chronic pain symptoms. (Tr. 133). Dr. McGann diagnosed Plaintiff with Adjustment Disorder with Depressed Mood, in the presence of chronic pain, and recommended training in behaviorally oriented pain management treatments. (Tr. 135). Despite several treatment sessions, Plaintiff indicated that he did not require assistance in dealing with the emotional effects of his pain and was discharged with no physical improvement reported. (Tr. 131).

On October 21, 1997, Plaintiff was evaluated by Reza R. Azar, M.D. for complaints of pain in his left lower and upper extremities. (Tr. 201-203). Dr. Azar found that Plaintiff was "severely depressed" with "extreme" weakness in both left upper and

8

lower extremities.  (Tr. 202).  The doctor also noted that Plaintiff had diminished deep tendon reflexes and discoloration in the left upper and lower extremities.  (Tr. 202).  He also noted that an MRI of the lumbar region was indicative of an old compression injury. (Tr. 202).  Dr. Azar concluded that Plaintiff had second stage RSD of the left lower extremity which had extended to the left upper extremity; a compression injury of the superior endplate of T-12; a bulging disc at the L5-S1 region; and severe depression and anxiety.  (Tr. 203).  Plaintiff's prognosis was deemed to be poor.  (Tr. 203).

On January 8, 1998, Dr. Azar reported that Plaintiff had been participating in treatment involving lumbar sympathetic ganglion blocks and physical therapy.  (Tr. 198). The doctor noted that Plaintiff's symptoms related to second stage RSD had remained the same, although they had not worsened.  (Tr. 199).  Plaintiff's prognosis was deemed to be guarded with "a prolonged period of treatment for only partial recovery, if any."  (Tr. 199).  Plaintiff continued to seek treatment from Dr. Azar over the next six (6) month period.  (Tr. 186-197).

An MRI of Plaintiff's cervical spine performed on March 18, 1998, reported very small disc herniations at C4-5 and C5-6 with no cord compression or significant stenosis. (Tr. 181).  On the same date, an MRI of Plaintiff's joints indicated skin thickening of both feet with some muscle enhancement (right greater than left) compatible with RSD along with some degree of skin thickening on both hands.  (Tr. 182).  An MRI of the lumbar spine performed on July 30, 1998, revealed no evidence of disc herniation or disc bulging

from T12-L1 through L5-S1 with no evidence of spinal stenosis.  (Tr. 259).

On September 1, 1998, Plaintiff began psychological therapy with John C. Williams, M.A., for the treatment of his chronic pain and the development of coping skills.  (Tr. 286).  Mr. Williams diagnosed Plaintiff with a depressive disorder characterized by anger, frustration, frequent lack of motivation, a sense of hopelessness and anxiety sometimes resulting in feelings of panic.  (Tr. 286).  Throughout his course of treatment over the next couple of months, Mr. Williams noted that Plaintiff suffered from depression, anger, "strong anxiety" and stress.  (Tr. 278-285).

On October 27, 1998, Dr. Azar reported that Plaintiff was receiving weekly physiotherapy with occasional trigger point injections or paravertebral nerve blocks.  (Tr. 287).  The doctor concluded that Plaintiff had sustained permanent damage to the lumbosacral region in association with second stage RSD which had distributed to the left upper extremity.  (Tr. 287).

On December 3, 1998, Dr. Azar completed a "Medical Assessment of Ability to Do Work-Related Activities" stating that repetitive motion intensified Plaintiff's pain, that Plaintiff could not ambulate well, and that he experienced weakness in his upper and lower extremities.  (Tr. 308).  The doctor concluded that Plaintiff could lift up to five (5) to ten (10) pounds for 1/3 of an eight (8) hour workday; sit without interruption for two (2) hours; and stand or walk for one (1) hour in an eight (8) hour workday.  (Tr. 306).  In support thereof, he noted that Plaintiff had RSD of the upper and lower left extremities, a

bulging disc at L5-S1, and herniated nucleus pulposis at C5-C6.  (Tr. 305).

On January 1, 1999, Plaintiff was treated at the emergency room for hyperventilation caused by an anxiety attack.  (Tr. 330).  Plaintiff's mental signs were all stable; his extremities showed no edema; senses were grossly intact; motor strength was 5/5; and deep tendon reflexes were symmetric.  (Tr. 330).

On March 30, 1999, Plaintiff's psychologist, Mr. Williams, completed a "Medical Assessment of Ability to Do Work-Related Activities (Mental)."  (Tr. 331-334).  Mr. Williams concluded that Plaintiff had "poor or none" ability to: follow work rules, related to co-workers, deal with the public, use judgment, interact with a supervisor, deal with work stress, function independently, and maintain attention or concentration.  (Tr. 332). In support thereof, Mr. Williams noted that Plaintiff had mood swings; intense stress and anxiety; forgetfulness involving blocks of time; poor concentration, focusing and memory; and an unstable emotional state.  (Tr. 332).  Mr. Williams also determined that Plaintiff had "poor or none" ability to understand, remember and carry out detailed, but not complex, job instructions; and a "fair" ability to carry out simple job instructions.  (Tr. 333).  Plaintiff was also deemed to have "poor to none" ability to make personal/social adjustments as well as being incapable of managing his own benefits.  (Tr. 334).

## B.    Plaintiff's Hearing Testimony

At the hearing, Plaintiff testified that he experiences pain throughout the left side of his body and through both hips.  (Tr. 389).  He stated that he takes the medications

Percocet,[6] Darvocet,[7] Demerol,[8] Klonopin,[9] Valium,[10] and Xanax,[11] (Tr. 358, 383-385, 404-406), and noted that the medications make him nauseous and tired. (Tr. 405, 407). On a typical day, Plaintiff stated that he watches television, naps, and visits friends. (Tr. 381, 402). He also attends therapy to treat his depression and feelings of anger. (Tr. 378).

### C.   Testimony of Vocational Expert

Carolyn Rutherford, a vocational expert ("V.E."), also testified at Plaintiff's administrative hearing. (Tr. 363-367). The A.L.J. asked the V.E. to assess the employability of an individual with Plaintiff's age, education, and work experience who was able to lift a maximum of 20 pounds, stand and walk a total of six (6) hours in a eight (8) hour workday, with 45 minutes of standing and walking every hour and 15 minutes of sitting. (Tr. 365). The V.E. testified that such an individual could perform work as a laundry aid, security guard, and information clerk. (Tr. 365).

---

[6] Percocet is a synthetic opioid analgesic indicated for the relief of moderate to moderately severe pain. Physicians' Desk Reference, 59th ed. (2005) ("PDR"), at 1223.

[7] Darvocet is indicated for the relief of mild to moderate pain. PDR at 402.

[8] Demerol is indicated for the relief of moderate to severe pain. PDR at 2988.

[9] Klonopin is indicated for the treatment of various seizure and panic disorders. PDR at 2895.

[10] Valium is indicated for the management of anxiety disorder or for the short-term relief of the symptoms of anxiety. PDR at 2957.

[11] Xanax is indicated for the management of anxiety disorder or the short-term relief of symptoms of anxiety. PDR, at 2764.

Upon questioning by Plaintiff's counsel, the V.E. acknowledged that an individual with either the psychological limitations set forth by Dr. Williams or the physical limitations set forth by Dr. Azar would be incapable of sustaining any gainful employment.  (Tr. 366-367).

## IV.   DISCUSSION

After reviewing Plaintiff's medical history and conducting the administrative hearing, the A.L.J. found in relevant part:

> 1.  [Plaintiff] met the disability insured status requirements of the Act on August 9, 1996 . . . and . . . remain[s] insured only through March 31, 1999.
>
> 2.  [Plaintiff] has not engaged in substantial gainful activity since August 9, 1996 . . .
>
> 3.  The medical evidence establishes that [Plaintiff] had on or before March 31, 1999: Reflex sympathetic dystrophy – an impairment which is severe but does not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. [Plaintiff's] Adjustment disorder with depression imposes no significant vocational limitations and is, therefore, a non-severe impairment.
>
> 4.  [Plaintiff's] statements concerning his impairments and their impact on his ability to work are not accepted to the extent those statements allege a level of disabling symptoms which exceed what the objective medical evidence and clinical findings could reasonably be expected to produce.
>
> 5.  On and before March 31, 1999, [Plaintiff] retains [sic] the residual functional capacity to lift and carry up to 20 pounds occasionally and ten [10] pounds on a regular basis; he can [sic] stand, walk or sit for up to six [6] hours, provided he can [sic] alternate between sitting and standing/walking with standing/ walking intervals of 45 minutes duration and sitting intervals of 15 minutes (20 C.F.R. § 404.1567).

7. [Plaintiff] is unable to perform his past relevant work as a driver or a bartender (medium, semi-skilled work) within the limits of his residual functional capacity.

* * * * *

10. Based on an exertional capacity for light work, and [Plaintiff's] age, educational background, and work experience, Section 404.1529 and Rule 202.21, Table 2, Appendix 2, Subpart P, Regulations No. 4, would direct a conclusion of "not disabled."[12]

11. Although [Plaintiff] is not able to perform the full range of light work, he is capable of making an adjustment to work which exists in significant numbers in the national economy.  Such work includes employment in the following jobs: laundry sorter . . ; security guard . . .; and, information clerk . . . A finding of "not disabled" is therefore reached within the framework of the above-cited rule.

(Tr. 20-21).  Thus, the A.L.J. reached step five (5) of the five- (5-) step sequential

evaluation in concluding that Plaintiff was not disabled.

Plaintiff contends that the evidence of record demonstrates that he is disabled and

that the A.L.J.'s decision is not supported by substantial evidence.  Specifically, Plaintiff

contends that the A.L.J. erred in: (1) failing to accord significant weight to the opinion of

Plaintiff's treating physician and psychologist; (2) finding Plaintiff's mental impairment

---

[12]Light work involves lifting no more than twenty (20) pounds at a time with frequent lifting or carrying of objects weighing up to ten (10) pounds.  20 C.F.R. § 404.1567(b).  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  Id.  To be considered capable of performing a full or wide range of light work, a claimant must have the ability to do substantially all of these activities.  Id.  If someone can do light work, the Social Security Administration has determined that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.  Id.

to be non-severe; (3) determining Plaintiff's residual functional capacity; (4) assessing Plaintiff's credibility; and (5) providing an incomplete hypothetical to the vocational expert.

### A.     Treating Physicians

Plaintiff argues that the A.L.J. erred in failing to appropriately consider evidence from his treating physician, Dr. Azar, and treating psychologist, Mr. Williams.  Both practitioners outlined limitations for Plaintiff which are inconsistent with the performance of substantial gainful activity.  A treating physician's reports are normally entitled to "great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (citations omitted).  "In choosing to reject the evaluation of a treating physician, an A.L.J. may not make 'speculative inferences from medical reports' and may reject 'a treating physician's opinion outright only on the basis of contradictory medical evidence' and not due to his or her own credibility judgments, speculation or lay opinion." Id. (quoting Plummer, 186 F.3d at 429); Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir. 1988) (holding that the medical judgment of a treating physician can be rejected only on the basis of contradictory medical evidence).

### 1.     Physical Impairments – Dr. Azar

In evaluating the evidence fo Plaintiff's physical impairments, the A.L.J. reviewed

the treatment notes from Plaintiff's treating physician, Dr. Azar, and acknowledged Dr.

Azar's highly restrictive assessment of Plaintiff's R.F.C.  (Tr. 19).  The A.L.J. then noted

the following reasons for not according the doctor's opinion substantial weight:

> Dr. Azar's opinion of disability is properly not given great weight because it is incomplete (he did not fill in the "Total" amount of standing/walking and sitting times provided for on the form) and it is unsupported by the objective tests of record. . . Dr. Azar's opinion lists [Plaintiff's] discogenic problems as a significant factor in his limitations.  However, the imaging reports of [Plaintiff's] lumbar and cervical spine show relatively mild findings (for example, the L5-S1 finding on the October 1997 MRI was central bulging or a minimal protrusion, the July 1998 lumbar MRI was essentially normal with no evidence of disc herniation, disc bulging or spinal stenosis and the cervical findings in the March 1998 cervical spine MRI did not compress the cord or cause central or forminal stenosis) and [Plaintiff] has never shown a radicular pattern of symptoms and further diagnostic work has not been ordered or planned for the discogenic findings.  Moreover, [Plaintiff's] subjective complaints have indicated symptoms consistent with RSD (e.g. burning).  For all the foregoing reasons, Dr. Azar's opinion of disability is not accepted.

(Tr. 19) (citations omitted).

  To the extent that the A.L.J. rejected Dr. Azar's opinion on the grounds that his

analysis was incomplete, I find dismissal on these grounds is improper.  If the A.L.J.

determined that the essential information was missing from Dr. Azar's assessment, then it

was incumbent upon him to recontact Dr. Azar to clarify his opinion.  Ventura v. Shalala,

55 F.3d 900, 902 (3d Cir. 1995) (the A.L.J. has a "duty to develop a full and fair record");

Dobrowolsky v. Califano, 606 F.2d 403, 406-407 (3d Cir. 1979) ("the special nature of

proceedings for disability benefits dictates extra care on the part of the agency in

developing an administrative record and in explicitly weighing all evidence").  Moreover,

to the extent that the A.L.J. relied upon the absence of "objective tests of record" to

discount Dr. Azar's opinion, I note that laboratory tests and diagnostic procedures do not

definitively diagnose RSD, but rather tend to rule out other causes for Plaintiff's pain and

limitations.  See generally Maiorano v. Barnhart, 105 Fed.Appx. 473, 2004 WL 1627258,

at *4 (3d Cir. July 21, 2004) (non-precedential opinion).[13]  In any event, I note that bone

scans performed in 1996 and 1997 suggested the presence of RSD and an MRI performed

in 1998 showed symptoms compatible with RSD.  (Tr. 108, 182).

   In rendering his opinion, I also find that the A.L.J. improperly focused on

Plaintiff's alleged back impairment to the point of excluding consideration of his RSD.

Although Dr. Azar listed Plaintiff's "discogenic disease" as one cause of Plaintiff's

physical limitations, he consistently listed RSD as his first diagnosis to explain Plaintiff's

limitations in both his R.F.C. assessment and in his treatment records.  (Tr. 186-197, 305-

308).

   Most importantly, I note that Dr. Azar treated Plaintiff for a substantial period of

time before completing his assessment of Plaintiff's R.F.C.  In his treatment records, Dr.

Azar noted Plaintiff's complaints of pain and RSD symptoms including: extremity

weakness, diminished deep tendon reflexes, and skin discoloration.  (Tr. 202).  Dr. Azar's

---

   [13]In citing to this non-precedential case, I acknowledge that the case is not binding, but
rather provides useful analysis for a factually similar matter, such as the instant case.

diagnosis is also supported by other physicians of record.  For example, Dr. Waters diagnosed Plaintiff with RSD in 1997 after finding increased temperature, swelling and edema in Plaintiff's left foot.  (Tr. 111).  Dr. Khan's treatment notes are also consistent noting "changes in coloration, decreased temperature as well as decreased mobility of the foot." (Tr. 122).  The A.L.J.'s failure to acknowledge the role RSD has played in Dr. Azar's treatment of Plaintiff, and its interplay with the doctor's analysis of Plaintiff's R.F.C., is therefore deficient.

Because it was incumbent upon the A.L.J. to clarify any ambiguity in Dr. Azar's R.F.C. assessment and to properly weigh the significance of this assessment in conjunction with his treatment records, I recommend remanding this matter for further evaluation.

### 2.        Mental Impairment – Mr. Williams

In evaluating the evidence related to Plaintiff's mental problems, the A.L.J. noted the following reasons for failing to accord controlling weight to Mr. William's opinion:

> Notably, Mr. Williams did not report any mental status examination findings or GAF assessments.  In addition, although there are some reports wherein [Plaintiff's] pain complaints are discussed, a significant portion of the therapy sessions are spent discussing stress over [Plaintiff's] financial situation, legal issues and relationship concerns (e.g. with his parents and girlfriend).

(Tr. 15).

Plaintiff contends that the A.L.J. improperly rejected Mr. Williams' assessment based on the erroneous conclusion that he did not perform a mental status examination

18

and because the A.L.J. improperly substituted his lay opinion as to the severity of

Plaintiff's mental impairment.  I agree.  Although Mr. Williams did not assess Plaintiff

with a GAF score,[14] I do not find that his failure to do so is renders Mr. Williams' opinion

irrelevant.  During treatment sessions, Mr. Williams provided pertinent information

regarding his clinical observations regarding Plaintiff's mental status and discussed

Plaintiff's interaction with the outside world.  (Tr. 278-286).  Moreover, although the

A.L.J. does not appear to give credence to Mr. William's form of "talk-therapy" and his

conclusions pursuant thereto, he does not have any countervailing evidence to contradict

Mr. Williams' opinion as to the severity of Plaintiff's mental impairment.  Frankenfield,

861 F.2d at 408 (holding that the medical judgment of a treating physician can be rejected

only on the basis of contradictory medical evidence); see also Morales, 225 F.3d at 317.

As a result, I find that this aspect of the A.L.J.'s opinion is not supported by substantial

evidence.

**B.     Mental Impairment at Step Two (2)**

Plaintiff next argues that the A.L.J. erred in concluding at step two (2) of the

sequential evaluation that Plaintiff's depression was not a "severe" impairment.  Step two

(2) is known as the "severity regulation" and focuses on whether the claimant is suffering

---

[14]"GAF" stands for Global Assessment of Functioning.  Diagnostic and Statistical Manual of Mental Disorders, 4th ed. Text Revision (2000), ("DSM IV-TR"), at 32.  The GAF score is a measurement of a person's overall psychological, social, and occupational functioning, and is used to assess mental health.  Id.

from a severe impairment.  20 C.F.R. § 404.1520(c).  An impairment is severe if it is "of

magnitude sufficient to limit significantly the individual's ability to do basic work

activities."  Santise v. Schweiker, 676 F.2d 925, 927 (3d Cir. 1982); see also 20 C.F.R. §

404.1521(a); Social Security Ruling 96-3p, "Considering Allegations of Pain and Other

Symptoms in Determining Whether a Medically Determinable Impairment is Severe."

Basic work activities is defined in the regulations as "the abilities and aptitudes necessary

to do most jobs."  20 C.F.R. § 404.1521(b).  A non-severe impairment is a "slight

abnormality" which had a minimal effect on the individual such that it would not be

expected to interfere with the individual's ability to work, irrespective of age, education

or work experience.  Bowen v. Yuckert, 482 U.S. 137, 149-151 (1987); Newell v.

Commissioner of Social Security, 347 F.3d 541, 546-547 (3d Cir. 2003).  The burden to

show a medically determinable impairment is on the plaintiff.  Id. at 146.

In concluding that Plaintiff's depression was "non-severe," the A.L.J. concluded:

> [Plaintiff] is relatively independent in his daily living activities.  He
> was able to move into, then out of, his parents' house – going to live
> with friends in Bethlehem in February 1999.  [Plaintiff] is able to
> drive and drives to all of his medical appointments.  He is able to
> exercise regularly on his treadmill.  [Plaintiff] testified that he
> socializes with friends, at times he has a regular girlfriend, and he
> maintains relationships with relatives, as evidenced by his ability to
> live at home for a time.  Moreover, [Plaintiff] is shown to be a good
> communicator in his treatment sessions and his examinations.
> Accordingly, [Plaintiff's] daily living activities and social
> functioning are slightly limited by his Adjustment disorder.
> [Plaintiff's] treatment notes show that he is appropriately concerned
> about real life issues that affect many people such as the uncertainty

of the legal processes, the difficulties of an adult living with his parents and maintaining ongoing relationships with friends, dealing with diminished physical capabilities after an injury, etc.  However, [Plaintiff's] treatment notes and the other credible documentary evidence of record do not document deficiencies in concentration or task persistence any more frequently than seldom as a result of his adjustment disorder.  Based on the foregoing, [Plaintiff's] mental impairment is a non-severe impairment.

(Tr. 15).

Plaintiff argues that in reaching the conclusion that Plaintiff did not have a "severe" mental impairment, the A.L.J. failed to account for the treatment records from Dr. Azar and Mr. Williams indicating that Plaintiff's limitations in key areas of functioning significantly exceeded the de minimis threshold of severity contained in the regulations.  I agree.  Dr. Azar found that Plaintiff had "severe" depression which impeded his daily functioning and required treatment.  (Tr. 188, 202-203, 277, 288).  Moreover, Mr. Williams found that Plaintiff was essentially mentally incapable of functioning at even the most minimal levels.  (Tr. 331-334).  Without countervailing evidence, and despite the A.L.J.'s characterization of Plaintiff's daily activities, I find it hard to reconcile the findings of Dr. Azar and Mr. Williams with the conclusion that Plaintiff's mental impairment would not interfere with the his ability to work.  As a result, and in accordance with my previous conclusion that the A.L.J. failed to accord the proper weight to Plaintiff's treating physicians, I find that this issue should be reconsidered on remand.

## C.    Residual Functional Capacity and Evaluation of Subjective Complaints

In his next claim, Plaintiff asserts the A.L.J. did not properly determine his residual functional capacity ("R.F.C.")[15] at the fifth (5th) step of the sequential evaluation.[16]  In evaluating Plaintiff's medical condition, the A.L.J. first determined that Plaintiff's RSD was a severe impairment; however, he discredited Plaintiff's claims of disabling pain due to that impairment.  Plaintiff claims that, in reaching this conclusion, the A.L.J. failed to properly evaluate his subjective complaints of pain and limitations on his ability to work.

In accordance with S.S.R. 96-7p, the A.L.J. is required to consider both the objective evidence of record, as well as Plaintiff's subjective testimony.  See 20 C.F.R. § 404.1529(b), see S.S.R. 96-7p, "Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements."  An A.L.J. can reject a claimant's subjective testimony if he does not find it credible, but must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding.  See Schaudeck v. Commissioner, 181 F.3d 429, 433 (3d Cir. 1999); see also S.S.R. 96-7p

---

[15]R.F.C. "is defined as that which an individual is still able to do despite the limitations caused by his or her impairments." Burnett, 220 F.3d at 121 (citing Hartranft v. Apfel, 181 F.3d 358, 359 n.1 (3d Cir. 1999)).  The R.F.C. assessment is properly based upon all of the relevant evidence of an individual's work-related activities. See S.S.R. 96-8p.  It is axiomatic that the A.L.J. must consider all of Plaintiff's conditions revealed by the record, and that the conditions must be considered in combination. See Burnett, 220 F.3d at 122 (as part of the R.F.C. analysis, "the A.L.J. must consider the combined effects of multiple impairments, regardless of their severity"); 20 C.F.R. § 404.1545.

[16]As previously discussed, the A.L.J. determined Plaintiff had the R.F.C. to perform a limited range of light work activity.  (Tr. 21).

("The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision").  Therefore, although a claimant's subjective allegations must be considered, there must also be objective medical evidence of an impairment or combination of impairments which could reasonably cause the symptoms, limitations and functional restrictions alleged.  S.S.R. 96-7p.

The A.L.J. concluded that Plaintiff's impairments were not likely to produce the degree of pain and symptoms alleged.  Specifically addressing Plaintiff's complaints of pain, the A.L.J. stated:

> Although Plaintiff asserts inability to work due to disabling residuals from [RSD] asserting that between the medication and the pain he can no longer drive trucks and deliver items, his complaints are not credible to the extent that objective test results and clinical findings of record do not show impairments with the degree of severity needed to produce the disabling pain and other disabling symptoms asserted on or before his date last insured of March 31, 1998 . . .
>
> The severity of [Plaintiff's] subjective complaints are not fully supported by the overall evidentiary record including his daily living activities which are reasonably robust, including an hour per day on the treadmill, driving to all his medical appointments, an active social life and the ability to move (change of residence) from place to place more than once during the period in question.  [Plaintiff] also admitted to heavy consumption of alcohol when he was hospitalized at St. Luke's Hospital in early August 1998.  These are not activities of an individual suffering from disabling pain.

(Tr. 17-18) (citations to record omitted).  Thus, the A.L.J. did not fully credit Plaintiff's testimony concerning his impairments and their impact on his ability to work.

23

I find that, in reaching the conclusion that his subjective complaints of pain were not credible, the A.L.J. erroneously failed to consider the nature of Plaintiff's diagnosed RSD which could reasonably have caused the symptoms, limitations and functional restrictions alleged.  As previously noted, RSD is marked by pain which appears to be "out of proportion to the severity of the injury sustained by the individual," and is not subject to diagnosis by traditional orthopedic or neurologic findings.  See SSR 03-2p.  It is significant that Plaintiff's ongoing complaints of pain, swelling, burning, and weakness progressing from his left lower extremity to his left upper extremity are consistent with his doctors' diagnosis of RSD.  Although it is true that Plaintiff was able to participate in some aspects of typical daily activities, I find that his limited participation in these activities fails to establish his ability to engage in substantial gainful activity.  See Jesurum v. Sec. Of Health & Human Services, 48 F.3d 114, 19 (3d Cir. 1995) (sporadic and transitory activity cannot be used to show an ability to engage continuously in substantial gainful activity).

For the foregoing reasons, I find that the A.L.J.'s conclusion regarding Plaintiff's credibility is not supported by substantial evidence.  Because the medical record provides medical evidence which appears to substantiate Plaintiff's complaints, I find that the issue should be remanded for further consideration.[17]

---

[17]Plaintiff also argues that in determining Plaintiff's R.F.C., the A.L.J. relied on an improper interpretation of Dr. Khan's 1997 R.F.C. assessment and failed to account for the side effects of Plaintiff's medication.  If the A.L.J. incorporates Dr. Khan's assessment on remand, I

### D.      Vocational Expert Testimony

In his last claim, Plaintiff contends that the A.L.J. presented an incomplete hypothetical to the V.E. because the hypothetical failed to include Plaintiff's limited ability to sit, stand, walk, lift and carry and failed to account for his inability to perform the mental demands of work.  As previously noted, I have found that the A.L.J.'s decision to accord little weight to Plaintiff's treating physicians' opinions and subjective complaints of pain as well as the A.L.J.'s decision to disregard Plaintiff's mental impairment are not supported by substantial evidence.  Consequently, when these issues are addressed on remand, further evaluation of the V.E.'s testimony may be required at that time.  See generally Chruplaca v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987) (citing Podedworny v. Harris, 745 F.2d 210 (3d Cir. 1984)) ("a hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence").

---

find that a complete analysis of Dr. Khan's opinion would be necessary at that time along with an analysis of how the side-effects of Plaintiff's medication would impact upon his ability to perform work-related activities.

Therefore, I make the following:

## R E C O M M E N D A T I O N

AND NOW, this        Day of May, 2005, it is RESPECTFULLY

RECOMMENDED that Plaintiff's Motion of Summary Judgment be GRANTED;

Defendant's motion for summary judgment be DENIED; the final decision of the

Commissioner be VACATED; and this matter be REMANDED for further proceedings

consistent herewith.


BY THE COURT:


/s_____

PETER B. SCUDERI

UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHAD E. WOOD, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| JO ANNE B. BARNHART, | : | |
| Commissioner of Social Security, | : | |
| Defendant | : | No. 01-3670 |

## O R D E R

AND NOW, this     day of                    , 2005, upon careful consideration of the Report and Recommendation filed by United States Magistrate Judge Peter B. Scuderi, and upon independent review of the Cross Motions for Summary Judgement filed by the parties, it is hereby ORDERED that:

1.    The Report and Recommendation is APPROVED and ADOPTED.

2.    Plaintiff's Motion for Summary Judgment is GRANTED.

3.    Defendant's Motion for Summary Judgment is DENIED.

4.    The decision of the Commissioner is VACATED, and this matter is REMANDED for further proceedings.

BY THE COURT:

_____

CLARENCE C. NEWCOMER, J.

28